# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JASON DEWAYNE HAVIS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **4:12-cv-01924-AKK** |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Jason Dewayne Havis ("Havis") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is not supported by substantial evidence and, therefore, **REVERSES** the decision denying benefits to Havis.

## I. Procedural History

Havis protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income Benefits on March 4, 2009, alleging a disability onset date of December 25, 2008 due to emphysema, migraine headaches, and a gunshot wound in his neck. (R. 170, 207). After the SSA denied Havis's applications, he requested a hearing before an ALJ. (R. 108, 113, 120). The ALJ subsequently denied Havis's claims, (R. 16-34), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-5). Havis then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1; *see also* doc. 9.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must

meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV.  The ALJ's Decision

The court notes initially that the ALJ properly applied the five step analysis. The ALJ first determined that Havis has not engaged in substantial gainful activity since December 25, 2008, and therefore met Step One. (R. 21). The ALJ also acknowledged that Havis's gunshot wound to the right scapula with retained bullet, headaches, chronic obstructive pulmonary disease ("COPD"), degenerative joint disease of the lumbar spine ("DJD"), and diminished intellectual functioning with a history of learning deficits were severe impairments that met Step Two. *Id*.

The ALJ proceeded to the next step and found that Havis failed to meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and thus did not satisfy Step Three. *Id*. at 22. Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Havis

> has the residual functional capacity to understand, remember, and carry out instructions sufficiently to complete simple tasks; to lift and carry 25 pounds occasionally and 10 to 15 pounds frequently; to occasionally crouch, crawl, reach overhead, and push/pull with the bilateral upper extremities; and to otherwise perform light work as defined in 20 CFR 404.1567(b) and 415.967(b) that deals with things as opposed to people; is goal-oriented rather than production-rate pace work; and does not require concentrated exposure to temperature extremes, vibration, or pulmonary irritants or the climbing of ladders, ropes, or scaffolds.

*Id*. at 25. With respect to the pain standard, the ALJ found that Havis's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Havis's] statements concerning his symptoms and their intensity, persistence, and limiting effects are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id*. at 26. Based on his RFC assessment, the ALJ found that Havis is unable to perform any past relevant work. *Id*. at 30. Finally, at Step Five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Hill] can perform[,]" and, thus, that Hill is not disabled. *Id.* at 30-31; *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Havis contends that the ALJ erred by (1) failing to properly consider and apply Listings 12.05B and C, and (2) substituting his opinion for that of the examining medical expert.  Doc. 9 at 7-16. For the reasons stated more fully below, the court finds that the ALJ's decision is not supported by substantial evidence.

**A.   Disability Based on Mental Disorder**

Under § 12.00 of the Social Security Listings, a claimant may obtain disability benefits by establishing one of several mental disorders.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.  "The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment[], consideration of the degree of limitation such impairment[] may impose on the individual's ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months."  *Id*. at §12.00A.  Havis contends that he suffers from the disabling condition of mental retardation, doc. 9 at 7, as specifically defined in § 12.05 – "significantly subaverage general intellectual functioning *with deficits in adaptive functioning* initially manifested" prior to age 22.  20 C.F.R.  Pt. 404, Subpt. P, App.1, § 12.05 (emphasis added).  "The required level of severity for this disorder

is met when the requirements in [subparagraphs] A, B, C, or D are satisfied." *Id*. Havis contends that the ALJ erred by failing to find him disabled under subparagraphs B and C of § 12.05. The court agrees.

1. Listing 12.05B

Under Listing 12.05B, a claimant is disabled if he presents "[a] valid verbal, performance, or full scale IQ of 59 or less[.]" 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05B. In other words, presentation of a valid IQ score below 59 is sufficient to demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning" despite the claimant's prior ability to engage in substantial gainful activity with the impairment. *See Ambers v. Heckler*, 736 F.2d 1467, 1469 (11th Cir. 1984). However, even if a claimant presents an IQ score below 59, an ALJ may properly find the claimant not disabled if the IQ score is not valid or is inconsistent with other evidence of record. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

In this case, Dr. Jack L. Bentley, Jr. performed psychological testing on Havis on June 9, 2010, including the Wechsler Adult Intelligence Scale-III ("WAIS-III") test. (R. 291). Havis obtained a verbal IQ of 58, a performance IQ of 58, and a full scale IQ of 54. *Id*. According to Dr. Bentley, "[t]hese results place [Havis'] cognitive functioning in the Middle of the Lower End of the Mild

Range of Mental Retardation." *Id*. The record indicates further that Havis was in "educable, mentally retarded" ("EMR") classes in grades 7 through 12. *Id*. at 227-229. However, despite Havis's IQ scores and school records, and Dr. Bentley's statements, the ALJ found that Havis did not meet Listing 12.05B. Specifically, the ALJ found that

> the fact that the claimant received EMR services is not dispositive of mental retardation or adaptive deficits. There are no IQ scores reflected in the records submitted and no information concerning the testing leading to his classification as EMR. Additionally, the same school records that confirm EMR services also show that the claimant successfully passed the math and language sections of the Alabama High School Graduate Examination – a highly unlikely accomplishment for an individual with a valid IQ falling in the low end of mild mental retardation. Furthermore, the claimant's history since high school is inconsistent with significant deficits in adaptive functioning. The claimant has a semi-skilled to skilled work history as a hotel maintenance worker and, according to his own report, worked in a supervisory capacity in that job. . . .
>
> Additionally, the undersigned is not convinced that the IQ scores produced at Dr. Bentley's evaluation are valid. . . . [Dr. Bentley] provides no information concerning the claimant's effort and/or motivation and voices no opinion as to the validity of the test results. The undersigned finds it notable that while the claimant was reportedly unable to define the words "repair" and "assemble" during this evaluation, he used those terms in claims-related forms when describing his former job duties. . . .
>
> However, even if the IQ scores are accurate, the evidence of the claimant's daily life and adaptive functioning would rebut the presumption of severe mental impairment.

(R. 24-25).

With respect to Havis's IQ scores, the court notes first that the ALJ's statement regarding Dr. Bentley's failure to state whether he considered Havis's IQ test results valid is directly contradicted by the record. Albeit after the ALJ's finding, Dr. Bentley opined that

> [h]aving administered the WAIS-III and WAIS-IV to many individuals over the last 30 years, it is reasonably easy to discriminate the individuals who are not making a reasonable effort on this phase of the evaluation. Mr. Havis's communication skills, general vocabulary and results of the intelligence testing were all consistent with individuals functioning in the Middle to Lower End of the Mild Range of Mental Retardation. Mr. Havis certainly appeared to make a reasonable effort and these results are judged to be both accurate and a reliable estimate of his cognitive functioning.

*Id*. at 243. Moreover, Havis's use of the terms "repair" and "assemble" on forms describing his prior work experience does not necessarily undermine his inability to abstractly define the terms during his evaluation with Dr. Bentley. Accordingly, the record does not indicate that Havis's IQ score is not valid and the ALJ's contrary finding was erroneous.

Next considering Havis's school records, the court disagrees that these records contradict a finding a disability under § 12.05C. Although it appears the school did not perform an IQ test on Havis prior to graduation, "the [current] IQ tests create a rebuttable presumption of a fairly constant IQ throughout [Havis's]

life." *Hodges*, 276 F.3d at 1268. Therefore, despite Havis's ability to pass the math section of the Alabama Graduation Exam, the court presumes that Havis's IQ was below 59 during high school, especially since he failed the other portions of the exam. Moreover, Havis's school records support a finding of mental disability because the school placed Havis in the "educable, mentally retarded" program. (R.227-229).

Lastly, the ALJ purports to rebut Havis's IQ score with evidence of Havis's prior work experience. *Id*. at 24. Just as in *Ambers*, "[t]his case presents an unusual situation in that the claimant was gainfully employed in the past with [his] impairments and upon cessation of gainful employment [otherwise] meets the Secretary's disability listing in Appendix 1, Part A, Section 12.05B[,]" namely, an IQ score below 59. *Ambers*, 736 F.2d at 1469. The prior ability to engage in gainful employment does not, however, defeat Havis's current disability claim under § 12.05B:

> The language of the statute states that disability means 'inability to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment. . .' 42 U.S.C.A. § 423. The regulations, however, state that '[t]he Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity.' 20 C.F.R. § 404.1525(a); 20 C.F.R. § 416.925(a). If an individual's impairment 'meets the duration requirement and is listed in Appendix 1 . . . we will find (the claimant) disabled . . .' 20 C.F.R. § 404.1520(d);

> 20 C.F.R. § 416.920(d). Therefore, upon cessation of employment, the regulations support a finding of disability if one meets the listings, even though the statute relates disability to the inability to work because of the impairment.

*Id*. Based on this Eleventh Circuit precedent, the court finds that Havis's prior work experience does not foreclose his ability to obtain benefits for a mental disability, even presuming the disability existing while he previously worked. No other evidence in the record contradicts Havis's alleged mental retardation and Havis claim, instead, is bolstered by a valid IQ score below 59 and corresponding school records. Therefore, the court declines to address Havis's claim under 12.05C and finds that the ALJ erred in failing to find Havis disabled under Listing 12.05B.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Havis is not disabled is not supported by substantial evidence. Therefore, the Commissioner's final decision is **REVERSED** and the case is **REMANDED** to the Commissioner to award Havis the benefits claimed.

**DONE** the 21st day of December, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE